UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DARREN MAURICE PATTON,

    Petitioner,

v.                                                        Case No. 2:06-cv-185
                                                         HON. ROBERT HOLMES BELL

GERALD HOFBAUER,

    Respondent.
_____/

**REPORT AND RECOMMENDATION**

Petitioner Darren Maurice Patton filed this petition for writ of habeas corpus challenging the validity of his state court conviction for second degree murder. Petitioner was convicted and sentenced to a prison term of 24 to 60 years.

Petitioner maintains that his conviction was obtained in violation of his federal rights. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

Petitioner has raised the following issues in his petition:

I. The trial court's refusal to instruct on self-defense and imperfect self-defense requires reversal.

II. A police sergeant testified he worked with a task force targeting the arrests of murder, rape, and armed-robbery suspects. On cross-examination, the sergeant non-responsively stated that the task force had three warrants for petitioner. The prosecutor later asked the

sergeant about petitioner being arrested on this murder warrant and other warrants, as well. The trial court found that the prosecutor had a lot of fun asking about this, and that the sergeant had volunteered information he really was not asked. The trial court abused its discretion in denying a defense motion for mistrial.

III. The police failure to electronically record defendant-appellant's statement denied due process of law.

Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court

decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412.  Rather, the application must also be "unreasonable." *Id.*  Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable.  *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)).  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998).  The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness.  This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990).  Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct.  The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner argues that he was denied a fair trial because the court declined to instruct the jury on self-defense and imperfect self-defense.  The Michigan Court of Appeals rejected petitioner's argument:

A trial judge must instruct the jury as to the applicable law, and fully and fairly present the case to the jury in an understandable manner. *People v Moore*, 189 Mich App 315, 319; 472 NW2d 1 (1991). The instructions must include all elements of the crime charged and must not exclude consideration of material issues, defenses, and theories for which there is evidence in support. *People v Canales*, 243 Mich App 571, 574; 624 NW2d 439 (2000). When a jury instruction is requested on any theories or defenses and is supported by the evidence, the instruction must be given to the jury by the trial court. *People v Mills*, 450 Mich 61, 81; 537 NW2d 909 (1995), modified on other grounds 450 Mich 1212 (1995).

A person has the right to use force to defend himself under certain circumstances. Lawful self-defense will excuse a defendant from homicide. CJI2d 7.15(1); *People v Riddle*, 467 Mich 116, 126, 142; 649 NW2d 30 (2002). To be lawful self-defense, the evidence must show that: (1) the defendant honestly believed that he was in danger; (2) the danger feared was death or serious bodily harm; (3) the action taken appeared at the time to be immediately necessary; and (4) the defendant was not the initial aggressor. *Id*. at 119, 120 n. 8. If there is proof that a defendant's belief of imminent danger was not honest or reasonable; it is sufficient to defeat a claim of self-defense. *People v Fortson*, 202 Mich App 13, 20; 507 NW2d 763 (1993).

After a comprehensive review of the record, we find that the evidence did not support a self-defense instruction. Here, defendant was the initial aggressor. Further, defendant's own testimony negates the suggestion that he held an honest and reasonable belief that he was in imminent danger of being killed or seriously injured. Specifically, although defendant's statement indicated that the victim picked up a stick, defendant never stated that the victim attempted to use the stick against him or that he believed he was in imminent danger because the victim had the stick. Defendant struck the victim numerous times with a chair. The victim fell to the ground and was bleeding. Defendant's statement indicated that the victim had a stick he grabbed after defendant kept hitting him. Defendant continued hitting the victim's head with the chair. Even assuming that defendant was afraid of the victim wielding a stick, there was no effort made to retreat before hitting the victim repeatedly with the metal chair, and therefore, the action taken was not immediately necessary. Simply, there was insufficient evidence that defendant reasonably believed that he was in imminent danger of death or serious bodily harm. There was not sufficient evidence to support a self-defense instruction. The court did not err in failing to give such an

instruction. *People v Hoskins*, 403 Mich 95, 97; 267 NW2d 417 (1978); *People v Williams*, 118 Mich 692, 698; 77 NW 248 (1898).

Imperfect self-defense is a qualified defense that may diminish second-degree murder to voluntary manslaughter. *People v Kemp*, 202 Mich App 318, 323; 508 NW2d 184 (1993). Imperfect self-defense is usually invoked when the defendant would have had the defense of self-defense if he had not been the initial aggressor. *Id*. However, the argument fails on occasions where the defendant used excessive force or unreasonably believed himself to be in imminent danger. See *Id*. at 325; *People v Butler*, 193 Mich App 63, 67; 483 NW2d 430 (1992).

Here, even if defendant had not been the initial aggressor, defendant's use of deadly force was not immediately necessary. There was no testimony by any of the eyewitnesses or any indication in defendant's statement to police that the victim fought back in any way. Further, there was uncontested eyewitness testimony that defendant hit the victim with a metal folding chair during the beating, and there was no indication that the level of force defendant used was justified. There was testimony that on the victim's glabella, which is the area of the face between the eyebrows, there was a skull fracture with actual exposure of underlying brain tissue, which indicated forceful impact with a large heavy object. The victim had at least nine separate blows to the back of the head, and at least five blows to the face area. The victim's scalp was torn and he had multiple skull fractures. Two of the wounds from the blows to the back of the head were circular and one inch in diameter, which would be consistent with a blow inflicted by a foot of the back metal folding stool. The victim had wounds on the back of the forearms and hands that are consistent with a defensive nature, with the arms flexed outward to allow him to defend himself. Thus, even if defendant had not been the initial aggressor, there was no evidence to establish that defendant's use of deadly force was immediately necessary. We find that the trial court did not err in refusing to given an instruction on imperfect self-defense.

In order to show a constitutional violation, petitioner must demonstrate that the failure to give the requested instruction violated due process. *Henderson v. Kibbe*, 431 U.S. 145, 153 (1977).

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in

- 5 -

> such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," . . . not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned,'" . . . .

431 U.S. at 154. The evidence presented at trial, taken in the light most favorable to the prosecution, was sufficient to justify the instructions given by the court. The court did not err in refusing to give the requested instructions because no factual evidence presented at trial supported the instructions. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner argues that the court erred by not declaring a mistrial after a police sergeant testified during cross-examination that petitioner had multiple warrants for his arrest. The Michigan Court of Appeals rejected that argument, concluding:

> Unresponsive testimony by a prosecution witness generally does not justify a mistrial unless the prosecutor conspired with or encouraged the witness to give unresponsive testimony the prosecutor knew in advance that the witness would give that testimony. *People v Hackney*, 183 Mich App 516, 531; 455 NW2d 358 (1990). Police officers have a special responsibility not to venture into forbidden areas, and this Court scrutinizes the unresponsive answers of officers to be sure that the defense was not prejudiced. *People v Holly*, 129 Mich App 405, 415; 341 NW2d 823 (1983); but see, *Hackney, supra*, 183 Mich App 531; *People v Lumsden*, 168 Mich App 286, 296-299; 423 NW2d 645 (1988); *People v Barker*, 161 Mich App 296, 305-307; 409 NW2d 813 (1987); *People v VonEverett*, 156 Mich App 615, 622; 402 NW2d 773 (1986); *People v Stinson*, 113 Mich App 719, 726-727; 318 NW2d 513 (1982).
>
> The trial court should grant a mistrial only when the incident is so egregious that the prejudicial effect cannot be removed any other way. *People v Coles*, 417 Mich 523, 554-555; 339 NW2d 440 (1983),

overruled in part on other grds *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). The test does not focus on whether there were some irregularities, but rather whether the defendant received a fair and impartial trial. *Lumsden, supra*, 168 Mich App 298.

In this case, the police sergeant had the following exchange on cross-examination with the defense attorney:

> Q. You say that you went out to arrest [defendant] on a warrant. Now, that warrant was actually issued in October, the – October 18th, wasn't it?
>
> A. I'm not sure what dates the warrants were issued.
>
> Q. Do you have that in your report.
>
> A. I doubt it.
>
> Q. Well, you testified under oath that you went out there on a warrant?
>
> A. Yes, I – yes, we arrested him on three warrants, to be precise.

During redirect examination, the sergeant's testimony continued.

> Q. Okay. And defense counsel asked you about a date that a warrant was issued. I believe you said October 21st, is that correct?
>
> A. That's what I have written down, yes.
>
> Q. Okay. Do you know whether that was the date that this warrant, this murder case was issued, or was it the other warrants that you arrested him on as well?

In this case, there is no indication that the prosecutor knew in advance that the witness would give the unresponsive testimony or the prosecutor conspired with or encouraged the witness to give that testimony. *People v Griffin*, 235 Mich App 27, 36; 597 NW2d 176 (1999); *Hackney, supra*, 183 Mich App 531. On redirect, the prosecutor was responding to issues brought up on cross-examination and only questioned the sergeant on issues that had been addressed by defense counsel in cross-examination. Further, the trial court

> immediately gave a cautionary instruction that the jury not consider whether the arrest was valid because it is not part of the case. The court's response to the mistrial motion was within its discretion.

Petitioner contends that the trial court abused its discretion in failing to declare a mistrial because the probative value of this testimony was outweighed by the prejudicial effect contrary to Michigan state law. However, "such an inquiry . . . is no part of a federal court's habeas review of a state conviction." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). In *Estelle v. McGuire*, the Supreme Court addressed the issue of whether the admission of evidence in violation of California state law entitled a petitioner to habeas corpus relief.

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); see also *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam).

*Estelle v. McGuire*, 502 U.S. at 67-8.

The appropriate inquiry is whether the allegedly improper admission of evidence violated the petitioner's constitutional rights. *Estelle v. McGuire*, 502 U.S. at 68. A federal court will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the denial of fundamental fairness, and therefore, a violation of due process. *Brown, III v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).

> "The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)).

*Brown, III v. O'Dea*, 187 F.3d at 578. Petitioner cannot show that his constitutional rights were violated. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner argues that his statement to police should have been recorded and that the failure to record his statement violated his rights under Michigan law. The Michigan Court of Appeals rejected this argument stating:

> Although defendant cites *Stephan v State*, 711 P2d 1156, 1159-1160 (Alas, 1985), in which the Alaska Supreme Court held that in order for a custodial confession to be admissible under the Due Process Clause of the Alaska Constitution, it must be electronically recorded when the interrogation is held in a place of detention and where recording is feasible, *People v Fike*, 228 Mich App 178, 186; 577 NW2d 903 (1998) is binding precedent in Michigan with regard to the subject of the admissibility of an unrecorded custodial statement made by a defendant. Under Michigan law, a defendant's right to due process is not violated by the mere failure to electronically record a police interrogation even if recoding equipment is available. *Id*. at 183-185. Defendant's statement to the police did not need to be suppressed merely because it was not electronically recorded, and therefore, the admission of the statement was not improper.

A federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988), *cert. denied* 488 U.S. 866 (1988). Therefore, it appears that this portion of petitioner's argument should be dismissed. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result

in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. In the opinion of the undersigned, petitioner can not establish that his constitutional rights were violated based upon the jury instructions, testimony or evidence presented at trial. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

       /s/ Timothy P. Greeley
      TIMOTHY P. GREELEY
      UNITED STATES MAGISTRATE JUDGE

Dated:   January 6, 2009